IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HAYWOOD HOUSTON,
                                :
    Plaintiff,              :
                                :
vs.                          :     CIVIL ACTION 11-678-CG-M
                                :
GWENDOLYN GIVENS, et al.,
                                :
    Defendants.           :

REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 brought by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is now before the undersigned on the Motion for Summary Judgment of Defendants, Gwendolyn Givens and James Sellers (Docs. 9, 19), and Plaintiff's Opposition thereto (Doc. 22).  After consideration of these pleadings, and for the reasons set out below, it is recommended that the Motion for Summary Judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I.    FACTS AND PROCEEDINGS

Based on the record before it, the Court summarizes the parties' allegations that it finds material to the issues addressed in this Report and Recommendation.

On December 24, 2009, while incarcerated at G.K. Fountain Correctional Center ("Fountain"), Plaintiff was attacked by another inmate at approximately 7:10 p.m. in the "T.V. area" of H-dorm.  (Doc. 1 at 4, 6).  The attack occurred after Plaintiff asked inmate Quincy Woodson to "tone it down in my ear" so he could hear the television.  (Id. at 4).  Inmate Woodson, who was sitting next to Plaintiff, told Plaintiff that Plaintiff could go stand in front of the television to hear it, because "he didn't [give] a [expletive]."  (*Id.*).  Inmate Woodson continued hollering to other inmates across the room. (Id. at 4).  When Plaintiff got up to leave, inmate Woodson "sucker punched" Plaintiff in the face with his fists and continued to kick and stomp Plaintiff after Plaintiff fell to the ground.  (Id. at 4, 7).  Two other inmates, Darryl Walker and Darryl Dixon, intervened and removed Plaintiff from the television area to his assigned bed area and hollered for help.  (Id. at 7).  As a result of this assault, Plaintiff's left eye was bleeding and his right eye was "shut closed."  (Id. at 9).

It is undisputed that, at the time of the incident, Defendant Gwendolyn Givens was the shift commander on duty, (Doc. 8-1 at 2) and Defendant Sellers was the officer assigned

to H-dorm.  (Docs. 8-1 at 2, 20-1 at 1).  Plaintiff claims that Defendant Sellers was "deliberately indifferent" to Plaintiff's welfare and safety when he left his post unguarded, thereby failing to "secure his area and protect unwary victims."  (Doc. 1 at 5).

Plaintiff alleges that had Defendant Sellers been at his assigned post, he could have seen "clean to the area" and prevented this assault from occurring. (Doc. 1 at 6).  Plaintiff also contends that because Defendant Sellers was not at his post, his medical treatment was delayed. (Doc. 1 at 7). In addition to the Complaint, Plaintiff filed an unsworn response to Defendants' Motion for Summary Judgment (Doc. 22) together with statements from four inmates that witnessed some portion of the attack.[1]

Additionally, Plaintiff claims that once he was taken from H-dorm to Defendant Givens' office, she questioned him for ten

---

[1] Two inmates filed statements under penalty of perjury. Inmate Darryl Dixon states under penalty of perjury that the assault was unprovoked and that no officer was in the dorm when the incident occurred.  (Doc. 23 at 2, 3).  Inmate Darrel Walker states, also under penalty of perjury, that no officer was in the dorm when the incident took place.  (Id. 23 at 6, 7).

Then, inmate Robert Lee Frazier states in his unsworn statement that no officer was in the dorm when the incident occurred and Plaintiff had to wait five to ten minutes for help. (Id. 23 at 4, 5).  And inmate Stanley Lindsey states in his unsworn statement that no DOC officer was in the block at the time of the incident.  (Id. 23 at 8).

or fifteen minutes before getting him medical treatment.  (Id. 1 at 6).

It is undisputed that Defendant Givens conducted an investigation into the assault and charged Plaintiff with a rule violation, #35-Fighting Without a Weapon.  (Doc. 8-1 at 2-3). Plaintiff was given a disciplinary hearing at which he could have contested the charges.  (Doc. 8-1 at 3).  Plaintiff did not call any witnesses or request that any witnesses be called to dispute the charge during the disciplinary hearing. (Doc. 8-1 at 3).  It is further undisputed that the investigation resulted in a finding that the Plaintiff and inmate Quincy Woodson were involved in a verbal altercation, which led to the assault of which Plaintiff complains. (Doc.8-1 at 3).  Plaintiff was sentenced to twenty-one days disciplinary segregation, as well as twenty-one days of loss of store, phone and visitation privileges.

For the injuries he received on account of Defendant Givens' and Sellers' failure to protect him, Plaintiff seeks compensatory and punitive damages for his injuries.  (Doc. 1 at 9).

In her Answer and Special Report filed on April 3, 2012, Defendant Givens denies that she violated Plaintiff's constitutional rights and asserts, *inter alia*, qualified immunity.  (Docs. 9, 8-1).  Defendant Sellers, in his Answer and

4

Special Report filed on August 16, 2012, likewise denies that he violated Plaintiff's constitutional rights and asserts, *inter alia*, qualified immunity.  (Docs. 19, 20-1).

On August 22, 2012, the Court entered an Order converting Defendants' Answers and Special Reports to a Motion for Summary Judgment.  (Doc. 21).  That Motion and Plaintiff's opposition thereto are now before the Court.

## II.   SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  It is well-established that summary judgment is proper and consistent with the Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v.*

*Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule

56(e) states that:

> If a party fails to properly support an assertion of
> fact or fails to properly address another party's
> assertion of fact as required by Rule 56(c), the court
> may:
>
>> (1) give an opportunity to properly support or
>> address the fact;
>> (2) consider the fact undisputed for purposes of
>> the motion;
>> (3) grant summary judgment if the motion and
>> supporting materials—including the facts
>> considered undisputed—show that the movant is
>> entitled to it; or
>> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "[T]here is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a

jury to return a verdict for that party. . . . If the evidence

is merely colorable, . . . or is not significantly probative, .

. . summary judgment may be granted."  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations

omitted).  "Summary judgment is mandated where a party 'fails to

make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party

will bear the burden of proof at trial.'"  *Custom Mfg. & Eng'g,

Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)

(citations omitted).

<u>III. DISCUSSION</u>

As set forth above, Plaintiff seeks redress pursuant to 42
U.S.C. § 1983 for the injuries he received from the incident
that occurred on December 24, 2009.  (Doc. 1).  Defendants deny
that they violated Plaintiff's constitutional rights and further
assert the defenses of absolute and qualified immunity.[2]  (Docs.
9, 19).  Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State

---

[2]  In his Complaint, Plaintiff does not specify whether he
is suing Defendants in their official or individual capacities.
(Doc. 1).  Accordingly, the Court will consider both.  As state
officials, Defendants are entitled to absolute immunity from
suit for damages in their official capacities.  *See Harbert
Int'l Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).
Furthermore, "[q]ualified immunity protects government officials
performing discretionary functions from suits in their
individual capacities unless their conduct violates 'clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  *Dalrymple v. Reno*, 334
F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S.
730, 739 (2002)).  Under *Saucier v. Katz*, 533 U.S. 194 (2001),
the "threshold question" to be determined before any other
inquiry is: "Taken in the light most favorable to the party
asserting the injury, do the facts alleged show the officer's
conduct violated a constitutional right?"  *Saucier*, 533 U.S. at
201.  Only if the answer to that question is affirmative may the
Court proceed to determine "whether the right was clearly
established ... in light of the specific context of the case,
not as a broad general proposition."  *Id.*  The two-part inquiry
established in *Saucier* is, however, no longer mandatory.
*Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of
the district courts and the courts of appeals should be
permitted to exercise their sound discretion in deciding which
of the two prongs of the qualified immunity analysis should be
addressed first in light of the circumstances in the particular
case at hand").  Having found herein that Plaintiff's
allegations do not establish a constitutional violation, "there
is no necessity for further inquiries concerning qualified
immunity."  *Saucier*, 533 U.S. at 201.

> or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress
> . . . .

42 U.S.C. § 1983 (1994).  Additionally, the Eighth Amendment

provides that, "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments

inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment's

proscription against cruel and unusual punishment prohibits

prison officials from exhibiting deliberate indifference to a

substantial risk of serious harm to an inmate.  *Farmer v.

Brennan*, 511 U.S. 825, 828 (1994).

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489

U.S. 189 (1989), the Supreme Court summarized a state's

constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody
> and holds him there against his will, the
> Constitution imposes upon it a corresponding duty
> to assume some responsibility for his safety and
> general well-being . . . . The rationale for this
> principle is simple enough: when the State by the
> affirmative exercise of its power so restrains an
> individual's liberty that it renders him unable
> to care for himself, and at the same time fails
> to provide for his basic human needs – *e.g.*,
> food, clothing, shelter, medical care, and
> reasonable safety – it transgresses the
> substantive limits on state action set by the
> Eighth Amendment and the Due Process Clause.

*Id.* at 189-200 (citations omitted).

8

In order to prevail on his Eighth Amendment claims, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citations omitted), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294 (1991) (citations omitted), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982) (citations omitted.)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca*, 995 F.2d at 1535. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ., but

9

must be balanced against competing penological goals." *LaMarca*,
995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102
(1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim
generally "inquires whether the officials acted with a
sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84
(citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This
component "follows from the principle that 'only the unnecessary
and wanton infliction of pain implicates the Eighth Amendment.'"
*Farmer*, 511 U.S. at 834 (quoting *Wilson* at 297).

In a prison condition case, the required state of mind for
a defendant is "deliberate indifference" to an inmate's health
or safety. *Farmer*, 511 U.S. at 834 (citations omitted). In
defining "deliberate indifference," the Supreme Court in *Farmer*
stated:

> We hold . . . that a prison official cannot
> be found liable under the Eighth Amendment for
> denying an inmate humane conditions of
> confinement unless the official knows of and
> disregards an excessive risk to inmate health or
> safety; the official must both be aware of facts
> from which the inference could be drawn that a
> substantial risk of serious harm exists, and he
> must also draw the inference.

*Id.* at 837.

The Court concluded that the "subjective recklessness"
standard of criminal law is the test for "deliberate
indifference" under the Eighth Amendment. *Id.* at 839-40.

Moreover, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." *Id.* at 838.  It is not enough that a plaintiff proves that the defendant should have known of the risk, even though he did not know; actual subjective knowledge is the key. *See, e.g.*, *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996).

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a "standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted).  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*

Having set forth the general legal principles relevant to Plaintiff's claims, the Court now turns to the application of those legal principles to the facts before the Court.

<u>Failure to Protect</u>

In his Complaint, Plaintiff claims that Defendants Givens and Sellers violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from

inmate Woodson's attack.[3]   (Doc. 1 at 5).   Plaintiff argues that
Defendant Sellers "left his post unguarded" during the time that
he was in the television area of H-dorm, "thereby fail[ing] to
secure his area and protect unwary victims."   (Doc. 1 at 5).
The facts above show that, at the time of the assault, Plaintiff
and inmate Woodson were engaged in a verbal altercation over the
noise level in the television room of H-dorm.   (Doc. 1 at 4).
It is this verbal altercation and assault that resulted in
Plaintiff's serious injury, i.e. the loss of his left eye.

In order to establish the objective element of an Eighth
Amendment claim in a failure to protect case, an inmate must
establish that the conditions under which he was incarcerated
presented "a substantial risk of serious harm."   *Farmer*, 511
U.S. at 834.   It is well-settled that "an excessive risk of
inmate-on-inmate violence at a jail creates a substantial risk
of serious harm . . . . And confinement in a prison where
violence and terror reign is actionable."   *Purcell ex rel.
Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320
(11th Cir. 2005).   However, "occasional, isolated attacks by one
prisoner on another may not constitute cruel and unusual
punishment."   *Id.*   Moreover, a "prison custodian is not the

_____

[3] Plaintiff's Complaint, which is signed under penalty of
perjury, is treated by the Court like a sworn affidavit.   *See
Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992).

guarantor of a prisoner's safety." *Id.* at 1321 (citations omitted).  Thus, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  In sum, and as discussed above, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety." *Id.* at 844 (citations omitted).

In the case at hand, Plaintiff has not alleged that he was exposed to the "constant threat of violence" while incarcerated at Fountain.  *See Purcell*, 400 F.3d at 1320.  Although Plaintiff alleged that Defendant Givens knew that 99% of the violence occurred while a guard is absent from his assigned post, Plaintiff has presented no evidence to establish that this condition existed and presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *but see Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995)(concluding that Hale produced depositions, affidavits and other evidence showing that inmate-on-inmate violence occurred regularly . . . during the two preceding years . . . thus [meeting] his burden on this element).

Also, Plaintiff submits his sworn Complaint and two sworn inmate statements as evidence that Defendant Sellers was not on his post at the time of the assault, thus creating the

opportunity for the assault to occur (Docs. 1, 23 at 2-3, 6-7). This evidence is merely a scintilla upon which a fair-minded jury could not reasonably return a verdict for Plaintiff. *See Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (stating that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"). By Plaintiff's own admission, this assault was spontaneous and unprovoked. Because this assault was spontaneous, the fact that Defendant Sellers was not at his assigned post at the time of the accident is of no consequence to Plaintiff's allegation, since Defendant Sellers could not have stopped an assault that he had no reason to anticipate occurring. Furthermore, Plaintiff has presented no evidence as to where Sellers assigned post was or how far it was from the TV room or that he could have prevented the fight if he had been there. Plaintiff presents only his conclusory allegations. Therefore, Plaintiff has failed to meet the objective element of his Eighth Amendment claim.

However, assuming, *arguendo*, that Plaintiff did satisfy the objective element of his Eighth Amendment claim, he must also show that Defendants were deliberately indifferent to the risk of serious harm to him. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of

serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm.  *LaMarca*, 995 F.2d at 1537.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Id.*

In this action, Plaintiff alleges that Defendant Givens knew that 99% of violence in prisons occur when there is no guard on duty.  This is a conclusory statement about what Givens knew or should have known without any evidentiary support.  Moreover, by Plaintiff's own admission, the record indicates that Defendant Givens did assign Defendant Sellers to H-Dorm on the date of the assault.  (Docs. 22 at 2, 8-1 at 4).  Measures were taken and in place to reasonably insured Plaintiff's safety. Also, Givens has no knowledge that such an assault would occur.

Moreover, Plaintiff fails to allege or substantiate that Defendant Sellers knew of the 99% percent risk of violence, which makes his alleged absence even less culpable to this spontaneous assault.  Sellers states that he was roving H-dorm at the time of the assault and responded once he learned of the attack (Doc. 20-1).  This attack was spontaneous and Plaintiff has neither alleged nor presented any evidence that Defendant Sellers knew of a substantial risk of serious harm to Plaintiff and was deliberately indifferent to that risk. It is mere speculation and conclusory that Sellers would have been able to prevent the altercation even if he had been at his assigned post at the time.  As stated above, Plaintiff has not stated where Sellers assigned post was or how far it was from the TV room. Furthermore, the record is devoid of evidence "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Farmer*, 511 U.S. at 842 (internal quotation marks omitted).

Plaintiff has also failed to present any evidence that Defendants were aware of a general risk or specific risk of harm to Plaintiff from inmate Woodson in particular.  There is no evidence that Woodson, or any other inmate, had made threats against Plaintiff and that these threats had been made known to any of the Defendants.  Plaintiff's own evidentiary submission

of inmate statements indicates that the attack was unexpected.
(Doc. 23).   Plaintiff had no reason to expect that he was in
danger of being attacked by inmate Woodson.  (Doc. 1 at 5).

Additionally, the conclusory allegation that the facility
was experiencing conditions of overcrowding and understaffing at
the time of the attack, without more, is insufficient for a jury
to reasonably find that these Defendants knew that a substantial
risk of serious harm existed, and they "knowingly or recklessly"
declined to take action to prevent that harm.  *LaMarca*, 995 F.2d
at 1535.  Accordingly, this Court finds that Plaintiff's
evidence is insufficient to establish the subjective element of
his Eighth Amendment claim as to either Defendant.

Finally, Plaintiff has failed to show that Defendants'
actions, orders, customs, policies or breaches of statutory duty
caused the deprivation of his constitutional rights.  According
to Plaintiff, the attack on Plaintiff was prompted by Plaintiff
requesting inmate Woodson to be quiet so Plaintiff could watch
television.  (Doc. 1 at 4).  The evidence indicates that the
attack was isolated and occurred suddenly without any warning.
(Id. 1 at 5, 7).  Plaintiff has neither presented evidence that
the attack was the proximate result of Defendant Sellers leaving
his post unguarded, nor has he presented evidence that he was
being confined in a prison "where violence and terror reign[ed]"
and where inmate-on-inmate violence abounded.  *Purcell*, 400 F.3d

17

at 1320.  Givens assigned Sellers to monitor and rove H-dorm.
This Court finds that Plaintiff's evidence is insufficient to
satisfy the causation element of his Eighth Amendment claim.

In conclusion, having found Plaintiff's evidence
insufficient for a jury to reasonably find that Defendants knew
of a substantial risk of harm to Plaintiff, that Defendants were
deliberately indifferent to that risk, and that Defendants'
conduct caused the deprivation of Plaintiff's constitutional
rights, summary judgment is due to be granted on Plaintiff's
failure to protect and reasonably insure Plaintiff's safety
claim.

<u>Conspiracy Claim</u>

It is well-settled that under "Federal Rule of Civil
Procedure 8(a)(2), a pleading must contain a 'short and plain
statement of the claim showing that the pleader is entitled to
relief.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 677-78 (2009).
Under *Bell Atlantic Corp. v. Twombly*, the pleading standard that
Rule 8 announces "demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation."  550 U.S. 544, 555 (2007)
(citation omitted).  A pleading that "offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.'"  *Id.*  Nor does a complaint
suffice if it tenders "naked assertions" devoid of "further
factual enhancement."  *Id.*  Applying these concepts to

Plaintiff's claim of conspiracy, which is merely a conclusory, naked assertion devoid of factual enhancement, this Court finds that Plaintiff has failed to allege or provide factual support for a proper conspiracy claim; however, out of an abundance of caution, we will address Plaintiff's allegations.

Plaintiff alleges that Defendants Givens and Sellers conspired to cover up their failure to protect Plaintiff by charging him with a disciplinary report.  The disciplinary report found that Plaintiff instigated the altercation by asking inmate Woodson to "tone it down in my ear."  However, Plaintiff contends that he had no part in causing the assault, but rather Defendants imposed a disciplinary report in order to cover up the allegation that there was no guard in H-Dorm at the time of the assault.  This Court finds that Plaintiff's conspiracy claim fails for the following reasons.

"In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required." *Fullman v.* Graddick, 739 F.2d 553, 556 (11th Cir. 1984).  It has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. *Id.* at 556-57 (citations omitted).  "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* at 557 (citations

omitted).  "Similarly, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment . . . but [the respondent], by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment . . . shall be entered against him."  *Id.* (citing Fed.R.Civ.P. 56(e)).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties 'reached an understanding' to deny the plaintiff his . . . rights [and] prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990).  For a conspiracy claim to survive a motion for summary judgment "[a] mere 'scintilla' of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Plaintiff submitted four statements in conjunction with his unsworn response, two of which were signed under the penalty of perjury and two of which were not.  None of the four statements speak to Plaintiff's conspiracy claim, but instead, essentially indicate that the attack was spontaneous and that there was no officer in the television area of H-dorm at the time of the attack.  There is no other evidence in the record to support

Plaintiff's conclusory allegation that Defendants conspired to deprive him of his constitutional rights.

<u>Fourteenth Amendment Claim</u>

Plaintiff alleges in his unsworn response that his due process rights were violated during the disciplinary hearing because Defendant Givens failed to "inform the Plaintiff prior to the disciplinary hearing who she got the information from that someone called the other a 'bitch' which caused the altercation." (Doc. 22 at 4). Plaintiff also alleges that his due process rights were violated when he was served with disciplinary report papers while he was mentally incompetent in the hospital and unable to remember who his witnesses were. (Id.). As a result of the disciplinary hearing, Plaintiff was sentenced to twenty-one (21) days of disciplinary segregation, twenty-one (21) days loss of store, phone and visitation privileges. (Doc. 8-1 at 11).

Plaintiff's Fourteenth Amendment claim fails for the following reasons. In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property." *Powell v. Carroll*, 2006 WL 2715128, at *7 (S.D.Ala. 2006) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); U.S. Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). In *Wolff*, 418

21

U.S. at 563-566, the Supreme Court set forth minimum
requirements of procedural due process which should be accorded
prisoners in disciplinary proceedings: (1) advance written
notice of the claimed violation; (2) a written statement of the
fact finders as to the evidence relied upon and the reasons for
the disciplinary action taken; and (3) an opportunity to call
witnesses and present documentary evidence in defense, when to
do so would not be unduly hazardous to institutional safety or
correctional goals. *Hall v. Leavins*, 2009 WL 2905912, *4
(N.D.Fla. 2009). The Court also indicated its reluctance to
review the judgments of prison administrators, acknowledging
that prison disciplinary proceedings do not require the "full
panoply of rights" due a defendant in a criminal proceeding.
*Id.* (citing *Wolff*, 418 U.S. at 556). Additionally, the Supreme
Court held that a decision of a disciplinary board need only be
supported by "some evidence." *Id.*, at *5 (citing *Superintendent
v. Hill*, 472 U.S. 445, 455 (1985)). "Ascertaining whether this
standard is satisfied does not require examination of the entire
record, independent assessment of the credibility of witnesses,
or weighing of the evidence. Instead, the relevant question is
whether there is *any evidence* in the record that could support
the conclusion reached by the disciplinary board." *Id.* However,
due process protections do not attach to all disciplinary
proceedings. *Hall*, 2009 WL 2905912, at *5. In cases where a

disciplinary decision does not result in the loss of gain time, and the only penalty is placement in the disciplinary confinement for thirty days, due process protections do not attach.  *Id.*, *see Sandin v. Conner*, 515 U.S. 472, 485 (1995). This is so because "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* (citing *Sandin*, 515 U.S. at 485-86).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented no evidence to establish that he had a constitutionally protected liberty interest in remaining free from disciplinary segregation for twenty-one days or for twenty-one days loss of store, phone and visitation privileges.  The Supreme Court held that a restriction of this degree and duration is insufficient to trigger due process protections.  *See Sandin*, 515 U.S. 472, 486. Hence, to the extent that Plaintiff has properly pled a due process claim, it must fail for there is no constitutionally protected liberty interest and judgment should be entered for Defendants on this claim.

### Medical Delay Regarding Defendant Givens

Plaintiff claims that Defendant Givens delayed his medical treatment for fifteen minutes while she questioned him in her office as to what happened leading up to Plaintiff's injury.

(Doc. 1 at 6).  Plaintiff was taken to Defendant Givens' office within ten minutes of the assault.

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain [which is] proscribed by the Eighth Amendment."  429 U.S. 97, 104 (1976) (citation omitted).  This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . ."  *Id.* at 104-05.  "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.  *Id.* at 105.  "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.*   The course of treatment is a "classic example of a matter for medical judgment."  *Id.* at 107.  A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation.  *Id.* at 106.

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted).  First,

the plaintiff must prove an objectively serious medical need. *Id.*  Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need.  *Id.*  In order to establish the second element of deliberate indifference, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than negligence.  *Id.* (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Plaintiff must present evidence that he possessed a serious medical need.  *Brannon v. Thomas Cnty. Jail*, 2007 WL 1701815, at *4 (M.D.Ga 2007).  The Eleventh Circuit has held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.*, at *7.  In either of these situations, the medical need must be "one that, if left unattended, poses a substantial risk of serious harm."  *Id.* (citing *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation omitted)).  With this definition of "serious medical need," it follows that Plaintiff's bleeding left eye and right eye, which was "shut closed," were indeed serious medical needs that even a layperson could recognize.  No one contests that fact.  Once in Defendant Givens' office, Defendant Givens did recognize Plaintiff's injuries as a serious and, within fifteen

minutes, escorted Plaintiff to the Health Care Unit.  (Doc. 8-1 at 2).  However, it is the amount of time that it took Defendant Givens to escort Plaintiff to the Health Care Unit that Plaintiff complains of.

The United States Court of Appeals for the Eleventh Circuit held that the seriousness of a prisoner's medical needs could be evaluated by reference to the effect of delay in treatment. *Brannon,* at *7 (citing *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) (not followed as dicta: "a finding of deliberate indifference necessarily precludes a finding of qualified immunity")).  Further, where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious.  *Id.*  An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Id.*

In this case, Plaintiff has argued that he was delayed medical treatment for ten or fifteen minutes after he was assaulted.  (Doc. 1 at 6).  Defendant Givens, however, states in her Special Report (Doc. 8-1 at 2) that, while it was her duty to question Plaintiff in order to find out what happened, she immediately escorted Plaintiff to the Health Care Unit when she saw the severe bleeding from Plaintiff's left eye.  (Id.).

Plaintiff was then transported to Atmore Community Hospital Emergency Room, and ultimately to Mobile Hospital where he lost his left eye.  (Doc. 8-1 at 7-8).

Aside from the mere allegations of delay in his Complaint, a close review of the record indicates that Plaintiff has failed to place verifying medical evidence in the record to establish that the alleged fifteen-minute delay resulted in Plaintiff suffering a life-long handicap or permanent loss that would not have occurred without such a delay.  Moreover, Plaintiff has failed to place any evidence into the record regarding *any* detrimental effect of the alleged delay in medical treatment. *See Brannon*, at *7.  Even if Plaintiff had submitted some type of evidence as to the effect of the delay, fifteen minutes would not constitute a delay that rises to the level of constitutional

violation.[4]  The damage to Plaintiff's eye was already done by inmate Woodson and was not caused by Defendant Givens' fifteen-minute delay. Without such evidence in the record, it is clear that Defendant Givens did not unconstitutionally delay in escorting Plaintiff to the Health Care Unit to receive medical treatment.  She recognized the seriousness of the injury and there is no evidence that she was deliberately indifferent to that need.  With the above principles in mind, it is clear that Plaintiff was neither denied medical care altogether, nor was his medical care intentionally delayed so as to amount to deliberate indifference.  Therefore, Plaintiff's argument of delay in medical treatment is without merit.  Accordingly, this

---

[4] *See Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990) (although hospital records showed that arrestee displayed multiple bruises to the forehead, left and right orbits of his eyes, nasal area, left ribs, right flank and left shoulder, and was suffering from abrasions to the cornea and upper back, consistent with alleged assault by police officer, there was "nothing in the record to suggest" that a ten-hour delay in medical treatment exacerbated these injuries "in the slightest"); *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir. 1988) (police officers did not violate arrestee's constitutional rights by fourteen-hour delay in obtaining medical treatment for cut under his eye that had stopped bleeding and removal of quarter-inch piece of glass embedded in his palm because there was "no suggestion that the delay in taking him to the hospital exacerbated his injuries in any way") *but* see *Wellman v. Faulkner,* 715 F.2d 269, 273-74 (7th Cir. 1983)(medical expert testified that five hours delay between time inmate went into cardiovascular shock and the time he was taken to the hospital caused his death).

Court finds that Defendant Givens is entitled to Summary Judgment on Plaintiff's claim of medical delay.

### Medical Delay Regarding Defendant Sellers

Plaintiff alleges that he was delayed medical care because an officer could not be found immediately after the attack, and other inmates had to "holler out the dorm to get attention for someone to get an officer to the dorm because the officer that was assigned to the dorm had left the dorm unattended." (Doc. 1 at 7).

Applying the same law and reasoning that was applied to Defendant Givens, this Court finds that Defendant Sellers is entitled to Summary Judgment on Plaintiff's medical delay claim as well, to the extent that such a claim is made. While there is a dispute as to Defendant Sellers' location at the time of the assault[5], Plaintiff has presented no evidence as to the effect that Defendant Sellers' location and alleged absence had on his injury. The record reflects that Defendant Sellers was

---

[5] Plaintiff's Complaint alleges that Defendant Sellers was not on his post at the time of the assault (Doc. 1). Defendant Sellers' Special Report states that he was in the front of H-dorm when the Plaintiff approached him with his injuries. (Doc. 20-1 at 1). Defendant Sellers also states in his Special Report that he was roving the dorm to maintain security when approached by the injured Plaintiff. Plaintiff's unsworn response alleges that Defendant Sellers had abandoned his post and was nowhere to be found during the whole situation. (Doc. 22 at 5). Plaintiff submits two sworn inmate statements which both state that there was no officer in the dorm at all when the assault occurred. (Doc. 23 at 3, 6).

the officer who responded to Plaintiff's injuries immediately after the assault.  (Doc. 20-1 at 1).  It is also undisputed that as soon as Defendant Sellers saw Plaintiff's severely bleeding eye, he immediately radioed for assistance.  (Doc. 20-1 at 2).

Applying the *Estelle* test set forth above, it is clear that Plaintiff's injuries were serious injuries, which even a layperson, such as Defendant Sellers, could recognize as a serious medical need.  However, it does not follow that Defendant Sellers acted with deliberate indifference to Plaintiff's medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

By Defendant Sellers' own admission, he was the officer who initially responded to Plaintiff's injuries, (Doc. 20-1 at 1), thus, it implicitly follows that Defendant Sellers had the requisite subjective knowledge of Plaintiff's risk of serious harm simply by virtue of viewing Plaintiff's severely bleeding eye.  It is also undisputed that Defendant Sellers radioed for assistance as soon as he saw Plaintiff's injuries (Doc. 20-1 at 2), which makes it amply clear that Defendant Sellers did not disregard Plaintiff's risk of serious harm.  The fact that Defendant Sellers immediately radioed for assistance is proof that his conduct was not only adequate, but can hardly be considered negligent, let alone deliberately indifferent.

Accordingly, the record indicates that Plaintiff has failed to produce any evidence that Defendant Sellers' alleged delay caused or exacerbated Plaintiff's injuries to a level that rises to deliberate indifference.  For failure to meet his burden of proof under *Estelle* and supporting case law, Plaintiff's medical delay claim is without merit.  This Court recommends that Defendant Sellers is entitled to Summary Judgment on Plaintiff's medical delay claim.

### IV. CONCLUSION

Based on the foregoing, this Court concludes that Defendants Givens and Sellers are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 4th day of December, 2012.

                        s/BERT W. MILLING, JR.
                        UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge=s Recommendation" within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party=s arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  *Fed. R. Civ. P.* 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 4th day of December, 2012.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE